**CONTRACT BUYERS LEAGUE** et al.,
**Plaintiffs,**

v.

**F & F INVESTMENT** et al., **Defendants.**

**No. 69 C 15.**

United States District Court
N. D. Illinois, E. D.
March 28, 1969.

See also D.C., 300 F.Supp. 210.

William R. Ming, Jr., McCoy, Ming & Black, Albert E. Jenner, Jr., Thomas P. Sullivan, Jenner & Block, Chicago, Ill., for plaintiffs.

Robert S. Cushman, Spray, Price, Hough & Cushman, Irving L. Block, Block & Erdos, Chicago, Ill., for defendants.

## OPINION

WILL, District Judge.

Plaintiffs in this action seek various relief under the provisions of the Civil Rights Act, 42 U.S.C. §§ 1981, 1982, 1983, 1985(3), and the Thirteenth and Fourteenth Amendments to the United States Constitution. Plaintiffs also seek relief for alleged violations of the federal Securities Laws, and for alleged violations of the Illinois common law regarding fraud, usury and unconscionable contracts.

It is alleged in the complaint that defendants have exploited a custom and usage of residential racial segregation in the City of Chicago so as to obtain unlawful benefits in their dealings with negro purchasers of used residential real property. Specifically, it is alleged that the defendant sellers acted to take advantage of the pattern of racial segregation and the scarcity of housing for negroes by obtaining purchase money mortgages, often in excess of the value of the properties involved, from defendant lenders who knew that defendant sellers intended to resell the properties to negroes under installment land contracts at prices far in excess of appraised value, and then selling the properties to plaintiffs at prices far beyond the cost or value of the real estate. It is further contended that these sales were consummated by means of installment contracts containing unconscionable provisions, particularly penalties and forfeitures reflecting alleged inequality of bargaining power; and that as a result of their concerted action in exploitation of the system of racial segregation, defendant sellers were able to fix the prices of the properties in violation of the federal and Illinois anti-trust laws. Additionally it is alleged that defendant sellers were guilty of misrepresentation and concealment in violation of the anti-trust laws, and that the execution of the contracts violated the Illinois common law regarding fraud, usury and unconscionable contracts.

The plaintiff negro purchasers seek to sue as a class for their own relief and that of all others similarly situated. Plaintiffs also contend that, under Rule 23 of the Federal Rules of Civil Procedure, defendants should be regarded as constituting a defendant class. It is necessary therefore to resolve the immediate and basic question in this cause —whether and to what extent this litigation can be brought as a class action under Rule 23 of the Federal Rules of Civil Procedure.

For an action to be properly maintainable as a class action, it must meet all the requirements set forth in Section 23(a) of the Rule and also fall within one of the subsections of 23(b). As to the provisions of 23(a) we first

note that the requirement that the class be so numerous that joinder of all members is impracticable appears to be satisfied in this case. Named plaintiffs number more than fifty persons and their complaint alleges a commonality of interest with many additional un-named persons. The second requirement of 23 (a), that there be questions of law or fact common to the class, is satisfied by the allegation of conspiracy and the allegation of concerted action by named defendants in similarly unconscionable circumstances of sale made possible by a common condition of residential segregation. That the same violations of law are alleged with respect to all of the contracts, and that similar relief is requested, also demonstrate satisfaction of the second prerequisite. And for these same reasons that the second prerequisite is satisfied, the third prerequisite, that the claims or defenses of the representative parties be typical of the claims or defenses of the alleged class, is satisfied. It should be noted, of course, that irrespective of this determination as to the second and third prerequisites, it is clear under Rule 23 that a remaining question is whether under 23(b) (3) the questions of law or fact common to the members of the class predominate over any questions affecting only individual members.

Our conclusion as to the fourth prerequisite, that is, whether the representative parties will fairly and adequately represent and protect the interests of the class, will to some extent necessarily depend upon whether this action can be deemed to fall within subsections 23(b) (2) or 23(b) (3) of the Rule, since defendants contend that the claim for relief presented by any particular plaintiff cannot be regarded as substantially related or similar to the claims of other purchasers. But apart from this fundamental consideration, no other question has been raised as to the adequacy of the present representation. The named plaintiffs themselves have a significant economic interest typical of that of the entire asserted class. *See,* Richland v. Cheatham, 272 F.Supp. 148, 153 (S.D.N.Y.1967). The named plaintiffs are represented by competent and experienced counsel, and there is no likelihood of a collusive suit or that named plaintiffs have interests antagonistic to the interests of other purchasers they purport to represent. *See,* Hansberry v. Lee, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940); Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 562 (2nd Cir. 1968).

The fundamental question of representativeness which runs throughout Rule 23 is the basis upon which defendants contend that this litigation is not properly a class action. Defendants' principal argument is that claims of overreaching, fraud and abuse of confidence, by their nature must relate exclusively to an individual contract between an individual buyer and seller. They urge that the claims in this case entail an investigation of the individual circumstances, economic and otherwise, of the execution of any particular contract concerning a particular property; that the issue presented by the allegations is to the extent to which any particular defendant exploited the condition of segregation to his individual advantage at the expense of an individual purchaser. In support of this analysis, defendants offer a statement of sixty-nine allegedly distinct issues of fact. Defendants also point out that there is some variation of the terms and conditions stated in the various contracts. In sum, it is defendants' position that the complaint in this cause is an artificial tying together of separate claims by separate plaintiffs against separate defendants and requiring separate proofs.

Turning to the subsections of 23(b), one of which must be satisfied for the maintenance of a class action, the provision which most specifically addresses the class action question as it is presented by the contentions in this case

is 23(b) (3). This subsection provides that a class action is appropriate where "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

It should be noted that this subsection requires a different determination than is called for by the statement of prerequisites in 23(a). That is, the question posed by 23(b) (3) is not whether there *are* common questions of law or fact, but rather, whether the common questions found under 23·(a) "predominate". Thus the Advisory Committee noted, for example, that "[p]rivate damage claims by numerous individuals arising out of concerted antitrust violations may or may not involve predominating common questions." Advisory Committee's Note, 39 F.R.D. 69, 103 (1966). This is true even as to complaints alleging conspiracy. Though considering all the facts of a particular case, the courts have often found that an allegation of conspiracy is sufficient to support an action under 23(b) (3). *See, e. g.,* Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 556 (2nd Cir. 1968); State of Minnesota v. United States Steel Corporation, 44 F.R.D. 559, 570 (D.Minn. 1968); Siegel v. Chicken Delight, Inc., 271 F.Supp. 722, 726 (N.D.Calif.1967). The factors to be taken into account under the word "predominates" as used in the new Rule 23(b) (3) may, however, convince the court that a class action cannot properly be maintained in a particular case. *See, e. g.,* School District of Philadelphia v. Harper & Row Publishers, 267 F.Supp. 100 (E.D.Pa. 1967); D & A Motors, Inc. v. General Motors Corp., 19 F.R.D. 365 (S.D.N.Y. 1956); United States v. E. I. Dupont De Nemours & Co., 13 F.R.D. 98 (N.D. Ill.1952).

As the word "predominate" is used in 23(b) (3), it essentially requires a determination of the utility of a class action for all alleged parties and the resolution of controversy. This is the clear import of the Advisory Committee's comment that "[i]t is only where this predominance exists that economies can be achieved by means of the class-action device." 39 F.R.D. at 103. Moreover, the Rule itself articulates broad indicia for this calculation in its provision that

The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

As defendants assert, it is germane to our determination under 23(b) (3) that the economic substance of the instant suit is many individual contracts with somewhat variable terms. But the gist of this complaint is that a broad pattern of similar activity has resulted in the violation of the civil rights of many people as well as the violation of state and federal laws. The logic of the complaint is that the execution of any particular unfair contract depended upon a series of discriminatory transactions, that the inequity of any particular contract is the result of a greater scheme of exploitation involving, among other factors, the contracts executed by the other plaintiffs. The complaint alleges that an extensive activity of fraud and discriminatory connivance was perpetrated within the framework of activity of buying from white homeowners to sell to negroes. In addition, the allegation is not simply that defendants took advantage of discriminatory market conditions existing by virtue of the system of *de facto* segregation, but that de-

fendants themselves worked to create the conditions for discriminatory benefit by "blockbusting"—a strategy of preying on racial fear so that white homeowners were stampeded into selling to defendants who then promptly resold at inflated prices to the victims of the *de facto* shortage of housing for negroes in the City of Chicago.

Besides the predominance of common questions of fact, the instant complaint also presents the predominance of legal issues common to the asserted class that is required by 23(b)(3). The common issues of law, for example, include the central questions whether defendants discriminated against negroes, whether a private right of action under Sections 1981, 1982 and 1983 can properly be recognized, whether the "state action" requisite to an action for denial of equal protection under the Fourteenth Amendment is present, whether an installment contract is a "security" within the meaning of the Securities Act of 1933 or the Securities Exchange Act of 1934.

Therefore, because both as to questions of law and fact the necessary "predominance" is present in this case, a class action may be maintained under 23(b)(3). And because the challenge to transactions with named defendants at once identifies and limits the class of plaintiffs in this litigation, we find that the allegations of the complaint identify a plaintiff class of negroes who, since January 1, 1952, have entered into installment contracts for the purchase from named defendants of used residential property located in Chicago.

 For the same reason, we find that this action does not identify an appropriate defendant class. That is, it is not claimed that all sales of used residential property to negroes since 1952 are within the specific allegations of this complaint, and there is no other definable limit for the group of sellers, other than the group of named defendants. Because they are named defend-

ants, there is no substantial reason to define them as a class. Also, because of this lack of reason for the definition of named defendants as a class, though it is alleged that named defendants acted in concert and also in conspiracy, it would seem most consistent with due process to focus on the group of named defendants as individuals in light of the nature of the allegations, particularly the allegations of fraud and overreaching.

It should be noted that our determination that plaintiffs may sue as a class is based on a recognition that there *are* undoubtedly individual questions with respect to particular contracts, and that though these individual questions will relate primarily to damages, they may also, to a lesser degree, pertain to liability. But the basic integrity of the claims in this litigation nevertheless demonstrates the propriety of a class action. Moreover, the courts have not been adverse to recognizing a class action where individual defenses may exist and require individual proof, so long as the basic matter of utility and representativeness favors the class action procedure. *See, e. g.,* Brennan v. Midwestern United Life Insurance Company, 259 F.Supp. 673 (N.D.Ind.1966).

The considerations discussed above also support the conclusion that the remaining requirement of 23(b)(3), the requirement that a class action be "superior to other available methods for the fair and efficient adjudication of the controversy" is also satisfied by the above definition of the class of plaintiffs. In particular, it should be recognized that the handling of this litigation as a class action is clearly superior at this stage of the proceedings in terms of the Rule 23 purposes of avoiding a multiplicity of actions and avoiding delay in securing any legitimate relief.

 Also fundamental to this complaint is the contention that plaintiffs were the subjects of fraud and discrimination in part because of their financial

inability to adequately protect their civil rights in the courts, and that it is by combining their financial resources that necessary legal expense can be met. While this contention by itself might be regarded as an insufficient and potentially artificial justification for a class action, it is clearly relevant in the overall determination of the other requirements of Rule 23. Its relevance as a ground for a class action was recognized even under the earlier class action provisions of the Federal Rules. For instance, the Seventh Circuit Court of Appeals some time ago referred to this in language which has been often repeated.[1] The Court wrote in Weeks v. Bareco Oil Co., 125 F.2d 84, 90 (7th Cir. 1941):

> Nor is the financial aspect to be overlooked—that is, the plaintiffs' and defendants' relative financial ability. The relative financial interest in the outcome of this litigation is such, that greater parity of ability is obtained by a joinder of plaintiffs.
>
> To permit the defendants to contest liability with each claimant in a single separate suit, would, in many cases give defendants an advantage which would be almost equivalent to closing the door of justice to all small claimants. This is what we think the class suit practice was to prevent.

 The nature of this action as discussed in determining the applicability of 23(b)(3) also indicates that it can be properly maintained as a class action under subsection 2 of 23(b), which makes provision for a class action where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." It is obvious that 23(b)(2) is intended to provide a basis for use of the class action procedure additional to that provided for under Sections 23(b)(1) and 23(b)(3). Thus, even though individual lawsuits might avoid the untoward effects following from separate actions in (b)(1) and (b)(3) situations, a class action may nevertheless be appropriate under 23(b)(2). Section 23(b)(2) was built on experience in the Civil Rights field. The Advisory Committee specifically noted in this regard the applicability of the subsection to actions involving alleged violations of civil rights, and that "an action looking to specific or declaratory relief could be brought by a numerous class of purchasers * * * against a seller alleged to have undertaken to sell to that class at prices higher than those set for other purchasers * * * when the applicable law forbids such pricing differential." 39 F.R.D. at 102. Though decisions under this section generally relate to actions against a single defendant, the substance and purpose of 23(b)(2) are satisfied in the instant suit because the allegations of unlawful execution of the contracts and subsequent efforts at collection or eviction constitute a claim that "the party opposing the class has acted or refused to act on grounds generally applicable to the class."[2] Indeed, as has

---

1. This language was quoted by Judge Robson of this court in State of Illinois v. Brunswick Corporation, 32 F.R.D. 453, 461 (N.D.Ill.1963). The language was also quoted approvingly in Zeigler v. Gibralter Life Insurance Company of America, 43 F.R.D. 169, 173 (D.S.D.1967) where the Court was considering Rule 23 as amended, and noted "the burden which could conceivably be placed upon the individual claimants should the suits be prosecuted separately."

2. We do not find at this stage of the litigation that the comment of the Advisory Committee that 23(b)(2) " * * * does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages", 39 F.R.D. at 102, is determinative. The allegation of illegal execution of the contracts, the claim for equitable relief to prevent the enforcement of the contracts, and the present efforts by defendants to evict members of the alleged plaintiff

been pointed out, the nature and legality of action generally applicable to plaintiffs is the gist of this lawsuit.

 We also point out, however, that neither 23(b)(1)(A) nor 23(b)(1)(B) appears applicable to the instant cause.[3] The need to meet a threat of inconsistent adjudications which is the thrust of 23(b)(1)(A) and 23(b)(1)(B) is not substantial here since different results as to adjudications involving different individuals could be distinguished on the grounds of different facts.

In any event, this possible variance does not belie the finding that this cause presents the necessary "predominance" to qualify as a class action under 23(b)(3). Moreover, the redrafting of Rule 23 was especially intended to give district courts the necessary flexibility to assure the effectiveness of the class action as a remedial device.[4] The rule thus makes provision at 23(c) for any subsequent modification of the class that appears appropriate as the actual contours of the litigation and problems of management are developed before the court.

 Finally, reinforcing the conclusion that a class action is presently appropriate is the principle recognized by the courts as implicit in the grant of discretion to modify, i. e., that the earlier

the stage of the proceeding, the more liberally should the court construe the applicability of Rule 23. For instance, as was recently stated by the Second Circuit Court of Appeals, "[i]f a class action is markedly superior to all the alternatives, then, at least at the early stages of the litigation, we should construe broadly the other elements of Rule 23." Green v. Wolf Corporation, 406 F.2d 291 (2nd Cir. Dec. 9. 1968); *see, also,* Esplin v. Hirschi, 402 F.2d 94, 99 (10 Cir. 1968); Siegel v. Chicken Delight, Inc., 271 F.Supp. 722, 728 (S.D.Cal. 1967).

In sum, the new Rule 23 was intended by its creators to be an ongoing experiment in sound judicial administration, with the substance of the rule providing the basic limits and standards for the exercise of judicial discretion. As Judge Frankel has observed,

> While there is much novelty and room for doubt in the new Rule, it is, by the same token, a mandate to adapt judicial procedure to constantly changing, increasingly complex patterns of litigation. Despite all of the possibilities of departure from our habitual ways, we will not be writing on a clean slate. However the forms of procedure may change, there should be no serious threat to the fundamental premises—that notice should be fair and ample in the circumstances,

class, altogether controvert the proposition that this is a case where the "appropriate final relief relates exclusively or predominantly to money damages." At least, this must be our conclusion given the present posture of the litigation.

3. Section 23(b)(1) provides: (b) Class actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition: (1) the prosecution of separate actions by or against individual members of the class would create a risk of (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the

party opposing the class, or (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

4. *See* 2 Barron & Holtzoff, Federal Practice and Procedure § 562 (1966 Supp., p. 73, Wright ed.); Cohn, The New Federal Rules of Civil Procedure, 54 Geo.L.J. 1204, 1217 (1966); Note, Class Actions—Federal Rule 23 Amended, 31 Albany L.Rev. 127, 130 (1967); Note, Proposed Rule 23, Class Actions Reclassified, 51 Va.L.Rev. 629, 642, 650-60 (1965).

that competing interests should be fully and fairly heard before decision, that no substantial right should be concluded before it has been tried out thoroughly in adversary proceedings. Frankel, Some Preliminary Observations Concerning Civil Rule 23, 43 F.R.D. 39, 52 (1968).

▮ The cases are uncertain as to what constitutes adequate notice under Rule 23, and this is largely because the notice requirement of Rule 23 sets forth the kind of broad discretionary limits characteristic of the Rule's adaptability to particular circumstances. It is provided in 23(c) (2) that "the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Applying this standard to the instant cause, we find that adequate notice should require individual notice to the extent that the identities of the class members are ascertainable. It is therefore necessary that each of the defendants furnish a list of persons known by them to be negro purchasers from them on installment contracts of used residential real estate in the City of Chicago since January 1, 1952. This will require a good faith attempt to list as many of the members of the class as possible through investigation consistent with the "reasonable effort" standard specified in 23 (c) (2).[5] As for the rest of the class, notice by publication in newspapers of general circulation in Chicago should be satisfactory. This latter form of notice has been utilized by this Court in other circumstances, Booth v. General Dynamics Corp., 264 F.Supp. 465, 472 (N.D.Ill.1967), where the class action procedure was peculiarly appropriate and there was no serious objection to notice by publication such as exists in cases where the interests represented so vary

that individual notice is required by due process. *See*, Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 569–570 (2d Cir. 1968).

For the foregoing reasons, this cause qualifies as a class action under Rule 23 of the Federal Rules of Civil Procedure, and the plaintiff class as herein identified must be provided with adequate notice as herein defined. An appropriate order will enter.

---

5. We reject the singular judgment in School District of Philadelphia v. Harper & Row Publishers, Inc., 267 F.Supp. 1001

(E.D.Pa.1967) that the Court itself must be burdened with sending proper notice.