Michel **CHEVALIER** et al., Plaintiffs,

v.

**BAIRD SAVINGS ASSOCIATION** et al., Defendants.

Civ. A. No. 72–1599.

United States District Court, E. D. Pennsylvania.

March 6, 1974.

Harold K. Cohen, Samuel Diamond, Diamond, Polsky & Bauer, Philadelphia, Pa., for plaintiffs.

Walter R. Milbourne, Obermayer, Rebmann, Maxwell & Hippel, Patrick T. Ryan, Drinker, Biddle & Reath, Michael J. Izzo, Jr., Clark, Ladner, Fortenbaugh & Young, William L. Matz, Zoob & Matz, Philadelphia, Pa., for defendants' Liaison Committee.

## MEMORANDUM AND ORDER

JOSEPH S. LORD, III, Chief Judge.

Plaintiffs have brought suit against a class of savings and loan associations and building and loan associations on behalf of a class of past, present and future individual mortgagors. They allege that the practice whereby defendants require that monthly payments of mortgage interest and principal amortization be due and payable at the beginning of each monthly period over the entire term of the mortgage loan results in an effective usurious maximum interest rate. This, they assert, violates the Federal Home Loan Bank Act, § 5 as amended, 12 U.S.C. § 1425[1] and the Consumer Credit Protection Act, "Truth-in-Lending," 15 U.S.C. § 1601 et seq. Plaintiffs additionally allege a violation of the Sherman Act, 15 U.S.C. §§ 1 and 2, in that defendants have conspired to restrain the competition of mortgage lenders and to fix prices by establishing a uniform and unlawful method of charging interest. To these federal claims plaintiffs seek to add the pendent common law claims of usury, breach of contract and unjust enrichment.

Defendants have filed a motion to dismiss Counts I, II, IV, V and VI and for summary judgment on Count II. Defendants make no attack on Count III, the antitrust claim.

---

1. "§ 1425. Limitation on lawful contract rate of interest receivable by members and nonmember borrowers; applicability to home mortgage loans on single-family dwellings

"No institution shall be admitted to or retained in membership, or granted the privileges of nonmember borrowers, if the combined total of the amounts paid to it for interest, commission, bonus, discount, premium, and other similar charges, less a proper deduction for all dividends, refunds, and cash credits of all kinds, creates an actual net cost to the home owner in excess of the lawful contract rate of interest applicable to such transactions, or, in case there is no lawful contract rate of interest applicable to such transactions, in excess of such rates as may be prescribed in writing by the Board acting in its discretion from time to time. This section applies only to home mortgage loans on single-family dwellings."

*Count I: Federal Home Loan Bank Act*

■ Defendants argue that we lack jurisdiction to consider plaintiffs claim under the Federal Home Loan Bank Act, 12 U.S.C. § 1425. However, we find it unnecessary to reach the issue of jurisdiction because we have concluded that § 1425 does not give rise to any private cause of action by a mortgagor against his mortgagee. In order to conclude that a statute gives rise to a private *cause of action, we must look at the* statute and at its legislative history. There is no hint in this statute or in its legislative history that Congress intended to create any private right of action. It provides only that an institution which violates the state usury laws may not be admitted to or retained in membership of a federal home loan bank. There is no indication that any other penalty was intended.

In Chavez v. Freshpict Foods, Inc., 456 F.2d 890 (C.A.10, 1972), the court said at 894 that unless Congress has displayed the intent for the courts to fashion private remedies from a federal regulatory statute, the court would not do so in the absence of "a compelling federal interest of a governmental nature." Here, the interest involved is basically a personal state interest, not a federal governmental interest: the violation of Pennsylvania's particular usury laws. Furthermore, there is no evidence that these usury laws do not provide adequate independent remedies.

It may be that plaintiffs could challenge the failure of the Federal Home Loan Bank Board to exclude defendants from membership. *Cf.* Data Processing Service v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). However, in light of the failure of the legislative history to suggest any intent to create a private right of action against the member institutions, and the absence of any special need to fashion a federal remedy, *defendants' motion to dismiss Count I* must be granted.

*Count II: Truth-in-Lending*

Defendants have moved for summary judgment on this count, relying on the expiration of the statute of limitations. Plaintiffs concede that the statute has run as to the Chevaliers. They refuse to concede, however, that the Trists, the other named plaintiffs, are also time-barred.

■ The Trists entered into their mortgage agreement on September 24, *1969, over four years ago.* The Truth-in-Lending Act provides that an action may be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). The date of the violation is deemed to be the date the transaction was consummated. Wachtel v. West, 344 F.Supp. 680 (E.D.Tenn. 1972); Williams v. American Savings Association, C.A. 3-6350-D (N.D.Tex., March 26, 1973). It would seem, therefore, that plaintiffs would be out of luck. However, plaintiffs cleverly argue that the statute of limitations was tolled by the application of the federal fraudulent concealment rule enunciated in Bailey v. Glover, 88 U.S. (21 Wall.) 342, 22 L.Ed. 636 (1875), which tolls the statute as long as the fraud is concealed, or the defendant is under a duty to disclose certain facts and fails to. Since Truth-in-Lending creates a "duty to disclose," plaintiffs argue, the failure to so disclose automatically tolls the statute of limitations. We cannot accept this argument, facially appealing though it may be. To apply the doctrine of fraudulent concealment in such a way would be to nullify the statute of limitations established in § 1640(e). Either that provision would be meaningless, or else plaintiffs would have us believe that a "violation" occurs only when the requisite disclosures are eventually made, or discovered. This certainly would square with no common understanding of the word "violation."

■ A necessary ingredient of fraud is *scienter*. While the doctrine of fraudulent concealment may well have applica-

tion to violations under Truth-in-Lending, this could only be where a *fraudulent* intention prevented the requisite disclosure. This would require at the least that defendants have known they were violating the provisions of the Act. Plaintiffs have made no such averments of fraud in their complaint. We doubt that plaintiffs can allege sufficient facts involving the motivation behind defendants' failure to make the alleged disclosures in order to aver fraud with the particularity required by F.R.Civ.P. 9(b). However, in order to allow for that possibility, we will deny defendants' motion for summary judgment but we will dismiss Count II without prejudice. Plaintiffs may amend their complaint to aver fraud specifically, if a basis for such allegations exists, within thirty days from the date of this opinion.

*Counts IV, V, and VI: Pendent Jurisdiction*

The only federal claim now remaining is Count III, the antitrust claim. Defendants argue that such being the case, we have no power to exercise pendent jurisdiction over the common law claims, and that if we do have such power, we should refuse to exercise it.

■ We have little doubt that we have the power to hear these pendent claims should we choose to do so. Regardless of the divergent theories of legal relief presented and proof required by the antitrust claim on the one hand, and the claims of usury, breach of contract, and unjust enrichment on the other, the various causes of action most certainly arise from the same operative facts, that is, the practice of all defendants to collect mortgage payments at the beginning of the monthly period. As the Third Circuit stated in Knuth v. Erie-Crawford Dairy Cooperative Assoc., 395 F.2d 420 (C.A.3, 1968), at p. 427:

"A right allegedly violated in a Sherman Act case and a right allegedly invaded under the common law may well have a common factual basis although the source of the 'right' is different."

*Accord* Peerless Dental Supply Co. v. Weber Dental Mfg. Co., 299 F.Supp. 331, 336 (E.D.Pa.1969).

■ Power is one thing; discretion is another matter. The issues of law involved in this case, particularly whether the practice described results in a violation of the state's usury laws, are questions never before resolved by the Pennsylvania courts. Resolution of the legality of the method of collecting mortgage payments will not be essential to an ultimate decision on the antitrust count. Therefore, the exercise of our discretionary jurisdiction in this case would needlessly involve us in complicated and unresolved questions of state law. The Supreme Court has recently reiterated various considerations for the exercise of discretion in matters of pendent jurisdiction in Moor v. County of Alameda, 411 U.S. 693 at 716, 93 S.Ct. 1785 at 1799, 36 L.Ed.2d 596 (1973), where they said that "the unsettled nature of state law * * * [was an] entirely appropriate [factor] for the District Court to consider."

Defendants have informed us, and the plaintiffs do not deny, that identical questions concerning Pennsylvania's usury laws and breach of the mortgage agreement are presently before the state courts. And avoidance of deciding unresolved state law issues is especially appropriate where the same questions are pending in state court. Sansom Committee v. Lynn, 366 F.Supp. 1271, 1280 (E.D.Pa.1973); Kinee v. Abraham Lincoln Federal Savings and Loan Assoc., 365 F.Supp. 975, 979 (E.D.Pa.1973); Jordan v. Montgomery Ward and Co., 317 F.Supp. 948, 950 (D.Minn.1970).

We are especially cautious because this suit purports to be a double-headed class action, a class of plaintiffs versus a class of defendants. If we were to decide for plaintiffs, and were eventually to clash with the result reached by the state court, defendants would be wrongfully subjected to potentially staggering

**1286**

damages. If we were to decide for defendants erroneously, *res judicata* might bar a whole class of plaintiffs from a recovery rightfully theirs. We therefore will dismiss plaintiffs' pendent claims without prejudice.

Because we have dismissed Counts I, II, IV, V, and VI, it is unnecessary to reach the issue of whether plaintiffs have standing to sue defendants with whom they have had no personal dealings. Defendants have not challenged plaintiffs' standing to sue them on the grounds of conspiracy to restrain competition.