Michel **CHEVALIER** and Jean Chevalier, his wife, Individually and on behalf of all members of a class of mortgagors similarly situated, et al.

v.

**BAIRD SAVINGS ASSOCIATION** et al.

**Civ. A. No. 72–1599.**

United States District Court, E. D. Pennsylvania.

March 4, 1975.

See also, D.C., 371 F.Supp. 1282.

---

2. This was written at a time before the word, Saturday, was added to the rule.

David J. Ackerman, Harold K. Cohen, Samuel Diamond, Diamond, Polsky & Bauer, Philadelphia, Pa., for plaintiffs.

Walter R. Milbourne, Obermayer, Rebmann, Maxwell & Hippel, Philadelphia, Pa., for defendants.

## OPINION

JOSEPH S. LORD, III, Chief Judge.

Plaintiff mortgagors challenge the practice whereby defendant savings and loan associations and building and loan associations charge monthly interest on mortgage loans at the beginning of each monthly period. This challenge is based on alleged violations of the Consumer Credit Protection Act, "Truth-in-Lending," 15 U.S.C. § 1601 et seq. (Count I), and the Sherman Act, 15 U.S.C. §§ 1, 2 (Count II). We have jurisdiction under 15 U.S.C. § 1640(e) and 28 U.S.C. § 1337. Plaintiffs purport to bring this action on behalf of a class of past, present and future individual mortgagors, and against a class comprising all savings and loan associations and building and loan associations within our jurisdiction. Neither class has yet been certified.

All named defendants have moved for summary judgment on Count I, asserting that the one year limitation period provided in 15 U.S.C. § 1640(e) has run. Additionally, those named defendants to whom none of the named plaintiffs have given mortgages seek summary judgment on Count I on the ground that plaintiffs lack standing to sue them. We shall grant the latter motion, but shall deny the former.

## STATUTE OF LIMITATIONS

An action for the violation of the Truth-in-Lending Act may be brought " * * * within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). "The date of the violation is deemed to be the date the transaction was consummated." Chevalier v. Baird Savings Assoc., 371 F.Supp. 1282, 1284 (E.D.Pa.1974).

The Chevaliers [1] originally filed this action on August 11, 1972. An amended complaint, filed on October 12, 1972, added Mr. and Mrs. Eric Trist as named plaintiffs, and First Federal Savings and Loan Association of Chester as a named defendant. Since the Trists entered into their mortgage agreement on September 24, 1969, defendants claim that even as of August 11, 1972, the limitations period had expired.

[1]. Plaintiffs have conceded that the Chevalier's Truth-in-Lending claim is barred by the statute of limitations. *See* Chevalier v. Baird Savings Assoc., 371 F.Supp. 1282, 1284 (E.D.Pa.1974).

On April 11, 1974, plaintiffs moved for leave to file a second amended complaint adding ten named plaintiffs ("additional plaintiffs"), and four named defendants. Leave was granted on April 22, 1974, and this latest complaint was filed on May 6, 1974. All of the additional plaintiffs, except Mr. and Mrs. Philip Lapsansky, state in their Answers to Defendants' Interrogatory No. 2 re Count I of the Second Amended Complaint that they had consummated their mortgages more than one year before April 11, 1974.[2] Defendants assert that they are therefore barred by the statute of limitations.

Plaintiffs urge the application of the federal fraudulent concealment rule enunciated in Bailey v. Glover, 88 U.S. 342 (21 Wall), 22 L.Ed. 636 (1875), which tolls the statute of limitations where a defendant has fraudulently concealed the facts which give rise to the cause of action.[3] In our earlier opinion in this case, Chevalier v. Baird Savings Assoc., *supra*, we refused to apply the fraudulent concealment doctrine on the ground that plaintiffs had failed to allege any fraudulent intention on the part of the defendants. We therefore dismissed the Truth-in-Lending count without prejudice, granting plaintiffs leave to amend their complaint to aver fraud specifically.

The second amended complaint cured this defect. In paragraphs 17, 18, 22 and 23, plaintiffs allege that the practice of charging interest in advance effectively raised their interest rates, finance charges and annual percentage rates, and that defendants concealed these increases from them by the use of false and misleading Truth-in-Lending Disclo-

sure Statements. In paragraph 24 plaintiffs aver that:

"[d]efendant [sic], at all times relevant hereto, knew or had reason to know thereof and intentionally and knowingly pursued such practice intending to conceal from the plaintiffs the effect thereof."

The allegations of these five paragraphs taken together satisfy the requirement of Rule 9(b), F.R.Civ.P., that the circumstances constituting fraud be stated with particularity. "[Rule 9(b)] only requires the identification of the circumstances constituting the fraud so that the defendant can prepare an adequate answer from the allegations." Walling v. Beverly Enterprises, 476 F.2d 393, 397 (C.A.9, 1973).

Defendants maintain, however, that plaintiffs lacked diligence in discovering their Truth-in-Lending claim. They argue that "* * * all the facts necessary to determine whether or not the Disclosure Statement was inaccurate was [sic] disclosed to the plaintiffs at the time the said Statement was provided to them." Defendants' Brief in Support of Their Motion for Summary Judgment as to Count I of the Second Amended Complaint, p. 10. Since the fraudulent concealment doctrine operates only where "* * * there has been no negligence or laches on the part of the plaintiff in coming to the knowledge of the fraud * * *", Bailey v. Glover, *supra*, 88 U.S. at 349, 22 L.Ed. 636, defendants contend that plaintiffs may not invoke its protection.

It may be that plaintiffs could have discovered their cause of action at the time they received their Disclosure Statement, or soon thereafter. How-

---

2. The Lapsanskys have not filed answers to Defendants' Interrogatories re Count I of the Second Amended Complaint. Defendants, however, have not moved to compel answers, nor have they raised any question as to this failure.

3. The additional plaintiffs also contend that the filing of the initial class action complaint tolls the statute of limitations for all members of the proposed class until a class determination is made. However, in light of our decision on the fraudulent concealment doctrine we need not discuss this contention.

ever, plaintiffs have alleged in paragraph 24 of the second amended complaint that:

"Plaintiffs and the members of the class of individuals they represent are not possessed of the expertise and knowledge necessary to permit them to make the complex and sophisticated calculations to determine the effect and accuracy of defendants' disclosures and relied on defendants' ability as to the accuracy of the aforesaid disclosures."

If this allegation is true—and defendants have thus far adduced nothing to the contrary—the mere disclosure of necessary facts might not be sufficient to enable a reasonably prudent layman to discover the existence of complicated mathematical deception. Any other determination, based on the current record, would require us to draw inferences favorable to movants. *Cf.* U. S. v. Diamond Coal and Coke Company, 255 U.S. 323, 41 S.Ct. 335, 65 L.Ed. 660 (1920). This we may not do on a motion for summary judgment. First Pa. Banking and Trust Co. v. United States Life Ins. Co., City of N. Y., 421 F.2d 959, 962 (C.A.3, 1969). While we do not decide that plaintiffs' Truth-in-Lending claim has survived the statute of limitations, the present record is insufficient to allow us to make a summary determination that it has not.

### STANDING

■ At present, Count I involves 12 named plaintiffs[4] and 21 named defendants. However, the plaintiffs have mortgage agreements with only 5 of the named defendants. The other named defendants, with whom none of the plaintiffs has dealt ("non-dealing defendants"), contend that the plaintiffs have no cause of action against them under the Truth-in-Lending Act, and, therefore, lack standing to sue them.

Plaintiffs do not deny that they, as individuals, have no Truth-in-Lending claim against the non-dealing defendants. They argue, however, that F.R. Civ.P. 23 has enlarged the traditional notion of standing to accommodate the type of action brought here. In support of this argument plaintiffs cite Haas v. Pittsburgh National Bank, 60 F.R.D. 604 (W.D.Pa.1973). In Haas, a single plaintiff brought a class action against three banks, alleging that defendants' method of charging interest on credit card accounts violated federal and state law. The plaintiff had never dealt with, and therefore had no cause of action against, one of the defendants. This defendant moved to dismiss on the ground that plaintiff had no standing to sue it. The court denied the motion, stating that:

" * * * it may be implicit in Rule 23 that once the class has been determined, whatever defects may exist as to the standing of the original named plaintiff can be cured by the eventual opting in (or more properly, under Rule 23(c)(2) failure to opt out) of class members who possess exactly those elements necessary to standing that the named plaintiff lacked." 60 F.R.D. at 612.

Since it might "be properly anticipated under Rule 23 that at least one member of the numerous group of persons within the class will have obtained his or her [credit] card from * * *" the moving defendant, 60 F.R.D. at 612, and since "[t]he essence of plaintiff's complaint goes to the credit cards, rather than the banks themselves", 60 F.R.D. at 613, the court concluded that the plaintiff, as a class representative, possessed sufficient standing to sue the bank against which she had no individual cause of action.

---

4. Hereinafter, unless otherwise stated, the word "plaintiffs" will be used to mean the named plaintiffs.

We cannot agree with this reasoning. Rule 82, F.R.Civ.P., provides:

"These rules shall not be construed to extend or limit the jurisdiction of the United States district courts * * *."

The requirement of standing is a limitation on the jurisdiction of the federal courts. *See* Flast v. Cohen, 392 U.S. 83, 94–100, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). *A fortiori* Rule 23 cannot be said to have broadened the concept of standing. A named plaintiff who individually cannot satisfy a monetary jurisdictional requirement may not rely on potential class members to infuse him with the requisite amount. Snyder v. Harris, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969); reh. den. 394 U.S. 1025, 89 S.Ct. 1622, 23 L.Ed.2d 50 (1969). Neither can a plaintiff who lacks standing to sue a defendant acquire such status through class representation. Weiner v. Bank of King of Prussia, 358 F.Supp. 684, 694 (E.D.Pa., 1973). Standing is one of the keys necessary to open the door to the federal courthouse. Rule 23 merely provides a procedural doorstop which holds the door open for qualified [5] class members, *once it has been opened by the person or persons initially seeking entry*.

Here that door has not been opened by plaintiffs.

"The 'gist of the question of standing' is whether the party seeking relief has 'alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues * * *.'" Flast v. Cohen, *supra,* 392 U.S. at 99, 88 S.Ct. at 1952, citing Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962).

Plaintiffs have not merely failed to allege any personal stake in a controversy with the non-dealing defendants, but in fact have admitted that no controversy at all exists between any plaintiff and any non-dealing defendant. Under such circumstances, standing to sue those defendants is clearly lacking.[6]

The motion of the defendants with whom none of the plaintiffs has dealt will, therefore, be granted.

---

5. *See* Zahn v. International Paper Co., 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973).

6. Plaintiffs have cited Samuel v. University of Pittsburgh, 56 F.R.D. 435 (W.D.Pa., 1972), Washington v. Lee, 263 F.Supp. 327 (M.D.Ala., 1966), aff'd. 390 U.S. 333, 88 S.Ct. 994, 19 L.Ed.2d 1212 (1968); and Contract Buyers League v. F. and F. Investment, 48 F.R.D. 7 (N.D.Ill., 1969), to support their claim of standing. In *Samuel* and *Washington* the defendants were officials or instrumentalities of a single state or subordinate governmental unit. This "juridical link" among the defendants distinguishes them from the non-dealing defendants. *See* La Mar v. H & B Novelty & Loan Company, 489 F.2d 461, 469–470 (C.A.9, 1973). In *Contract Buyers League* the court ruled on certification of the alleged classes, but did not discuss standing. Since the opinion does not state whether or not each of the named defendants had dealt with at least one of the named plaintiffs, that decision is not at odds with the result we reach.