**ANGEL MUSIC, INC., on Behalf of itself and all other publishers, persons and entities which own copyrighted music and which are represented by the Harry Fox Agency, Inc., Plaintiffs,**

v.

**ABC SPORTS, INC., on behalf of itself and all other producers, syndicators and distributors of television programs utilizing copyrighted music, Defendants.**

**No. 84 Civ. 7900 (RWS).**

United States District Court,
S.D. New York.

Aug. 8, 1986.

Thomas A. Dickerson, New York City, for plaintiffs.

Hawkins, Dealafield & Wood, New York City, for defendant ABC Sports, Inc.; Thomas W. Pippert, Philip R. Forlenza, Terrence J. Hines, of counsel.

Weil, Gotshal & Manges, New York City, for amicus curiae;. Kenneth L. Steinthal, Evie C. Goldstein, of counsel.

## OPINION

SWEET, District Judge.

The action at bar concerns the alleged failure of a purported class of producers, syndicators and distributors of television programs to obtain synchronization licenses for their use of certain musical compositions owned by the plaintiff class of music publishers and music copyright owners, all in violation of the Copyright Act, 17 U.S.C. § 101 *et seq.* Defendant ABC Sports, Inc. ("ABC") has moved for an order dismissing the class action allegations in plaintiff Angel Music, Inc.'s ("Angel Music") complaint with respect to the defendant class, pursuant to Fed.R.Civ.P. 12(c), and is joined by *amicas curiae* All-Industry Television Station Music License Committee ("All-Industry"). For the reasons set forth below, ABC's motion to dismiss the defendant class action allegations in the complaint is granted.

### Prior Proceedings

Angel Music filed this action for damages and injunctive relief on November 1, 1984 pursuant to the Copyright Act, 17 U.S.C. § 101 *et seq* alleging that the members of the defendant class have failed to pay the plaintiff music publisher class for its reproduction of theme or background music in synchronization with filmed images—in essence, failure to obtain "synchronization rights" licenses in violation of the Copyright Act, 17 U.S.C. § 106(1).[1] On

---

1. The original complaint also alleged that The Harry Fox Agency, Inc. which represents pub-

lishers and copyright owners of music in licensing their "mechanical rights" and "synchroniza-

August 19, 1985 and October 15, 1985, the parties cross-moved for summary judgment, which was fully submitted and argued on December 20, 1985. These motions were denied by this court's opinion of March 27, 1986 which sets out the factual predicate for this action. Concluding that disputed factual issues remained outstanding, the court stated:

> The resolution of this labeling dispute—whether ABC's use of "Walkin With Mr. Lee" was an example of a recording incidental to a performance right or an unlicensed synchronization—in this highly sophisticated and intricate industry is a question of fact properly reserved for a trial on the merits.

*Angel Music, Inc. v. ABC Sports, Inc.*, 631 F.Supp. 429, 434 (S.D.N.Y.1986).

Pending the outcome of this summary judgment motion, Angel Music's original motion dated December 13, 1984, for certification of plaintiff and defendant classes was held in abeyance. At a status conference before the court on April 23, 1986, ABC was given time to conduct discovery concerning the class allegations in the complaint and to proceed with the instant motion to dismiss the class action allegations in the complaint.

**The Issues**

Although this opinion assumes familiarity with the facts set out in prior opinions of the court, a brief overview of the allegations which pertain to the certification of bilateral plaintiff and defendant classes is necessary. Pared down to its simplest form, Angel Music claims, on behalf of a class of music publishers, that a class of defendants comprised of an unnamed number of television networks, television stations, their television production affiliates and independent producers have engaged in a common practice of using copyrighted music in synchronization with visual images without paying for a "synchronization license."

According to Angel Music, in both prior proceedings before the New York Civil

Court, Small Claims Part [*Sporn v. ABC Sports, Inc.*, Index No. 08850–84] and in related depositions, several of ABC's counsel and officers have stated that failure to obtain synchronization rights licenses for the uses in questions was a uniform broadcast industry custom and practice and was not an isolated policy of ABC. Furthermore, Angel Music asserts that the members of this defendant class are functionally linked by their need to use copyrighted music in television programming, their method of obtaining these compositions from publishers or performance rights organizations such as Broadcast Music, Inc. ("BMI") and The American Society of Composers, Authors and Publishers ("ASCAP") and the overarching statutory regulation of this system by the provisions of the Copyright Act, 17 U.S.C. § 101 *et seq.*

In addition to these functional and legal links, it is Angel Music's belief that the members of defendant class will be asserting common defenses to this copyright infringement action, namely reliance on the "incidental right to record" "language in the license which BMI granted to ABC," a "fair use" defense premised upon 17 U.S.C. § 107, an "Ephermeral Recordings" defense premised upon 17 U.S.C. § 112, and various laches and estoppel defenses.

ABC and All-Industry categorically dispute these characterizations of the commonalities of the defendant class members. ABC claims, and Angel Music does not dispute, that the purported defendants consist of thousands of television program producers, including 800 local television stations, with no common performance rights license, and a plaintiff class of over 3,500 music copyright owners. ABC contends that Angel Music's description of the defendant class evidences the unbounded scope of the class which consists of "television networks, television stations, syndications such as motion picture studios and their television production affiliates, independent television program producers and

---

tion rights," failed to protect such rights in violation of its fiduciary duties to the plaintiff

class. This claim was dismissed on May 22, 1985 for lack of subject matter jurisdiction.

others in the business of creating and selling television programs." (Complaint ¶ 6).

ABC and All-Industry also assert that these class members are neither factually nor legally linked. For example, each of the various defendant entities has a different arrangement with its music supplier and does not share a common license with ABC, most engage in programming far narrower in scope than that produced by the three television networks, and each defendant conducts distinct business operations which may or may not require it to obtain the synchronization license at issue.

ABC contends that Angel Music has asserted a single claim of copyright infringement against a single network defendant based on a nineteen-second excerpt of "Walkin With Mr. Lee" used in ABC Sports coverage of the 1984 Winter Olympics, and has attempted to leverage this claim into a class action by asserting that hundreds of television producers should be named as infringers because ABC has defended its actions by pointing to an industry-wide policy of non-payment for one-time synchronizations.

**Discussion**

ABC and All-Industry have launched a two-fold attack on the viability of the defendant class named in this action. First, ABC contends that Angel Music as name plaintiff lacks the standing under Article III, Section 2, Clause 1 of the Constitution to sue the members of the defendant class against whom it has no claim of injury. The second and theoretically overlapping attack is that Angel Music cannot satisfy the "typicality" requirements of Rule 23(a),[2] Fed.R.Civ.P. because as a named plaintiff who has no standing to sue each defendant class member, Angel Music cannot adequately represent unnamed plaintiffs who have been directly injured by members of the defendant class.

■ According to ABC, Angel Music's status as a named plaintiff of the class must fail as Angel Music has but a single copyright infringement claim against a single defendant, ABC Sports. The Supreme Court has recently elaborated on the standing threshold for name plaintiffs in a class action suit:

The individual respondents sought to maintain this suit as a class action on behalf of all persons similarly situated. That a suit may be a class action, however, adds nothing to the question of standing, for even named plaintiffs who represent a class "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."

*Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 40 n. 20, 96 S.Ct. 1917, 1925 n. 20, 48 L.Ed.2d 450 (1976), *citing Warth v. Seldin,* 422 U.S. 490, 502, 95 S.Ct. 2197, 2207, 45 L.Ed.2d 343 (1975).

A substantial body of case law has developed in this circuit and others which endorses this threshold standing analysis as it pertains to both bilateral and defendant class actions. In the leading case of *Weiner v. Bank of King of Prussia,* 358 F.Supp. 684 (E.D.Pa.1973), the court expressed the requirement that the plaintiff must establish his personal standing to sue each defendant before attempting to satisfy the requirements of class certification set out by Rule 23. In *Weiner,* the named plaintiff attempted to sue a class of defendant national and state banks for violations of the National Bank Act, Pennsylvania bank

---

**2.** Rule 23(a) of the Federal Rules of Civil Procedure require plaintiffs who seek to certify plaintiff or defendant classes to meet the following threshold requirements:

... "One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately represent and protect the interests of the class."

After these prerequisites are satisfied, the class must also fit into one of the three enumerated subsections of Rule 23(b).

regulatory statutes, the Truth in Lending Act and various common law fiduciary duties. The court, holding that the plaintiff borrower did not have standing to sue the 19 banks with whom he had no credit transaction, observed:

> The complaint fails to place the plaintiff in the category of a debtor having any dealings with, let alone being injured by, the actions of the nineteen moving defendants. The plaintiff cannot cure this defect by claiming to sue representatively on behalf of those who may have been so injured.... A plaintiff may not use the procedural device of a class action to bootstrap himself into standing he lacks under the express terms of the substantive law. It must be noted that the question of standing is totally separate and distinct from the question of plaintiff's right to represent a purported class under Rule 23. While standing to sue is a prerequisite to maintaining an action, whether in one's own right or as a representative of a class the issues are not convertible. Standing to sue is an essential threshold which must be crossed before any determination as to class representation under Rule 23 can be made. Without standing, one cannot represent a class, but standing to sue does not, of itself, support the right to bring a class action.

*Id.* at 694. (citations omitted). *See also Chevalier v. Baird Savings Association,* 66 F.R.D. 105 (E.D.Pa.1975) (Mortgagors had no standing to bring a class action against a class of all savings and loan associations and building and loan associations in the jurisdiction where named plaintiffs had not dealt with several members of the defendant class).[3]

Similarly, the Third Circuit in *Kauffman v. Dreyfus Fund, Inc.,* 434 F.2d 727 (3d Cir.1970), *cert. denied,* 401 U.S. 974, 91 S.Ct. 1190, 28 L.Ed.2d 323 (1971) denied the named plaintiff, a shareholder in four mu-

tual funds, the right to bring a class action against sixty-five mutual funds charging securities laws and antitrust violations. The court observed that Kauffman, who was suing derivatively on behalf of the funds, did not have standing to bring a class derivative action on behalf of other funds similarly situated:

> Because appellee, as a shareholder of the four funds, does not have standing to assert a personal action, it is evident that he may not serve as a class representative under Rule 23 on behalf of all similarly situated shareholders of the 65 funds. Before one may successfully institute a class action "[i]t is of course necessary generally that [he] be able to show injury to himself in order to entitle him to seek judicial relief" ...

> . . . . .

> In short, a predicate to appellee's right to represent a class is his eligibility to sue in his own right. What he may not achieve himself, he may not accomplish as a representative of a class.

*Id.* at 734 (citations omitted).

The courts of this circuit have expressly endorsed these concepts of standing for named plaintiffs in purported class actions as articulated in *Weiner v. Bank of King of Prussia, supra,* reaffirming the principle that representative plaintiffs must have individual standing to assert claims against all the members of a defendant class. *Akerman v. Oryx Communications, Inc.,* 609 F.Supp. 363, 377 (S.D.N.Y.1984); *Vulcan Society v. Fire Department of the City of White Plains,* 82 F.R.D. 379, 398–99 (S.D.N.Y.1979); *Leonard v. Merrill Lynch, Pierce, Fenner & Smith,* 64 F.R.D. 432, 434 (S.D.N.Y.1974).

The second prong of ABC's challenge to certification of a defendant class is its related assertion that Angel Music lacks the "typicality" to adequately represent the

---

3. The *Chevalier* court stated, "A Fortiori Rule 23 cannot be said to have broadened the concept of standing. A named plaintiff who individually cannot satisfy a monetary jurisdictional requirement may not rely on potential class members to infuse him with the requisite amount ... Neither can a plaintiff who lacks standing to sue a defendant acquire such status through class representation." *Id.* at 109 (citations omitted).

plaintiff class, as it cannot "typify" the claims of potential plaintiffs who have been directly injured by members of the defendant class if it has no personal claim against those defendants. The Ninth Circuit's opinion in *LaMar v. H & B Novelty & Loan Co.*, 489 F.2d 461 (9th Cir.1973) is a leading expression of this typicality requirement in the bilateral class context, where the court refused to certify a defendant class of state pawnbrokers who had allegedly engaged in practices which violated the Truth-in-Lending Act, 15 U.S.C. §§ 1601–1677. Holding that a class action was inappropriate as to the defendants with whom the named plaintiffs had no direct dealings, the court explained:

> In brief, typicality is lacking when the representative plaintiff's cause of action is against a defendant unrelated to the defendants against whom the cause of action of the members of the class lies
>
> .    .    .    .    .
>
> [W]e assert that a plaintiff who has no cause of action against the defendant cannot "fairly and adequately protect the interests" of those who do have such causes of action. *This is true even though the plaintiff may have suffered an identical injury at the hands of a party other than the defendant* and even though his authority is excellent in every material respect.

*Id.* at 465–66 (emphasis supplied). *See also Kauffman v. Dreyfus Fund, Inc., supra,* 434 F.2d at 734 ("A plaintiff who is unable to secure standing for himself is certainly not in a position to 'fairly insure the adequate representation' of those alleged to be similarly situated"); *Akerman v. Oryx, supra,* 609 F.Supp. at 377; *Vulcan Society v. Fire Dept. of the City of White Plains, supra,* 82 F.R.D. at 399.

Angel Music has attempted to meet these claims of lack of standing and lack of typicality with the assertion that the alleged actions of the defendant class of television producers place this action within the class of exceptions to the *Weiner* and *LaMar* rule that a named plaintiff must be injured by each member of the defendant class in order to meet the "case or controversy" requirements of Article III, and the typicality requirements of Rule 23.

Viewing its allegations in the most favorable light, Angel Music contends that the members of the defendant class have engaged in a common violation of the Copyright Act which places their actions within the juridical link exception to *LaMar*. Angel Music relies, *inter alia*, on juridical link cases such as the Second Circuit's opinion in *Marcera v. Chinlund*, 595 F.2d 1231 (2d Cir.), *vacated* 442 U.S. 915, 99 S.Ct. 2833, 61 L.Ed.2d 281 (1979); *Doss v. Long*, 93 F.R.D. 112 (N.D.Ga.1981); and the district court opinions and *Driver v. Helms*, 74 F.R.D. 382 (D.R.I.1977), *aff'd in part, rev'd in part*, 577 F.2d 147 (1st Cir.1978), *cert. denied*, 439 U.S. 1114, 99 S.Ct. 1016, 59 L.Ed.2d 72 (1979); to assert that the defendant's industry-wide policy of circumventing a uniform statutory scheme for copyright licensing creates an "injury in fact" to all members of the plaintiff class which obviates the need for a *Weiner* or *LaMar* standing or typicality threshold.

However, this broad construction of the juridical link exception to *LaMar* obscures the confines of that doctrine. The juridical link exception has been confined to instances when a class of plaintiffs, usually attempting to vindicate their civil rights, brings an action against a class of state officials charged with uniformly enforcing an allegedly unconstitutional statute or administrative policy. *See Broughton v. Brewer*, 298 F.Supp. 260 (S.D.Ala.1969) (state and county officials linked by their enforcement of an allegedly unconstitutional vagrancy statute); *Marcera v. Chinlund, supra*, 595 F.2d 1231 (2d Cir.1979) (county sheriffs named as a class of defendants implementing a statewide administrative practice of denying contact visitation rights to prison inmates); *Driver v. Helms, supra*, 74 F.R.D. 382 (D.R.I.1977) (defendant class of federal officials of the Central Intelligence Agency, United States Post Office, Federal Bureau of Investigation, etc. charged with interfering with

first class mails for intelligence gathering purposes).

■ As the Honorable Abraham D. Sofaer recently described the juridical link exception to *LaMar*, "Courts have also shown a willingness to find that named plaintiffs have standing to sue a class encompassing some defendants against whom they individually might not have a cause of action on the ground that the plaintiff class as a whole has been victim of a unified governmental policy carried out by the individual defendants." *Akerman v. Oryx Communication, Inc., supra,* 609 F.Supp. at 375, and denied such a juridical link in the case before him, as "a defendant class may not be certified simply on the ground that underwriters distributed identical printed matter to securities' purchasers." *See also Mudd v. Busse,* 68 F.R.D. 522 (N.D.Ind.1975), *aff'd,* 582 F.2d 1283 (7th Cir.1978), *cert. denied,* 439 U.S. 1078, 99 S.Ct. 858, 59 L.Ed.2d 47 (1979). (A class of defendants consisting of all judicial officers in Indiana who allegedly abuse their discretion by setting bail in excess of reasonable levels would not be certified where the only links among defendants was a challenge to the exercise of discretion and not a challenge to the state law framework). This narrowly confined "juridical link" exception to *LaMar* is, therefore, far narrower than Angel Music's claim that the alleged common industry practice[4] of ignoring the need to obtain synchronization rights licenses provides a juridical link between members of the defendant class which obviates the need for a direct injury to the named plaintiff.

Angel Music's also fails in its attempts to place its copyright infringement allegation within the second group of cases carving out an exception to *LaMar* and *Weiner*. Angel Music relies upon the holdings in a series of cases which permitted the certification of a class of defendants bound together by adherence to a single document or industry-wide contract which caused them to engage in the challenged practices. According to Angel Music, the industry-wide infringement on publishers rights to require producers to obtain synchronization licenses analogously binds those television producer defendants with common illegal practices, common factual circumstances and common defenses to the infringement claims of music copyright owners and publishers.

However, a close examination of this second exception to *Weiner* and *LaMar* reveals that class certification in these cases hinged upon the existence of written contracts or agreements which required each defendant to adhere to the challenged practice. *United States v. Trucking Employers, Inc.,* 75 F.R.D. 682, 689 (D.D.C.1977) (certification of defendant class allegedly engaging in employment discrimination where class members were bound by a national master freight agreement and defenses were typical of the class);[5] *Alaniz v. California Processors, Inc.,* 73 F.R.D. 269, 276 (N.D.Cal.1976) (class certification granted where all of the defendants operate under a single industry-wide collective bargaining agreement and the crux of the action revolves around that agreement); *Doss v. Long, supra,* 93 F.R.D. 112 (N.D. Ga.1981) (the fact that each named plaintiff did not have a cause of action against each named defendant would not prevent the certification of a defendant class of judges who were paid a fee for services performed rather than a salary, as this uniform munic-

---

4. It is notable that ABC and All-Industry vigorously dispute the existence of such an industry-wide practice. ABC contends that although irrelevant for the purposes of determining issues of standing and typicality, Angel Music has rested its common practice allegations solely on statements from three ABC employees, statements which attempted to justify the network's use of the nineteen-second excerpt from "Walkin With Mr. Lee," a composition licensed by Angel Music.

5. The court specifically noted "Here, each member of the defendant class provides an identical service, requires employees who possess identical skills, and utilizes identical job classifications. Perhaps most telling is that each is a party to the National Master Freight agreement or its area supplements." *Id.* at 689.

ipal court and justice of the peace system insured that common defenses will be raised and no separate legal theories will be advanced).

It is evident from these citations that these cases have carved out an exception for defendant classes whose conduct is standardized by a common link to an agreement, contract or enforced system which acts to standardize the factual underpinnings of the claims and to insure the assertion of defenses common to the class. This "independent legal relationship" also mitigates the due process concerns latent in defendant class certifications, as its presence "denote[s] some form of activity or association on the part of the defendants that warrants imposition of joint liability against the group even though the plaintiff may have dealt primarily with a single member." *Akerman v. Oryx Communication, Inc., supra,* 609 F.Supp. at 375.

Such an independent legal relationship is absent from this defendant class, which is comprised of unrelated television producers, both independent and network, who use the compositions of the plaintiff class members. Angel Music has not alleged that each of the defendants operates pursuant to a uniform license, the link which justified bilateral class treatment in *Buffalo Broadcasting Co. v. ASCAP,* 744 F.2d 917 (2d Cir.1984), *cert. denied,* 469 U.S. 1211, 105 S.Ct. 1181, 84 L.Ed.2d 329 (1985).[6] Furthermore, the instant action purports to unite members of a defendant class who in all probability will present unique factual circumstances concerning their use of the compositions in question, and who will raise distinct defenses because of the varied relationships between each publisher and producer.

To summarize, Angel Music has no standing to allege a cause of action against any of the members of the defendant class, apart from its specific allegation of copyright infringement against ABC Sports. As a related result, Angel Music cannot "adequately represent" the interests of the plaintiff class of music copyright owners who have been directly injured by the alleged failure of defendants to obtain synchronization rights licenses within the meaning of Rule 23. The defendant's motion to dismiss the class action allegations in the complaint is granted.

IT IS SO ORDERED.

---

**6.** Angel Music contends that its description of the defendant class is adopted from the same certified class in *Buffalo Broadcasting, Inc. v. ASCAP,* 744 F.2d 917 (2d Cir.1984), *cert. denied,* 469 U.S. 1211, 105 S.Ct. 1181, 84 L.Ed.2d 329 (1985). However, *Buffalo Broadcasting* concerned two defendant classes bound by a single form of blanket license agreement and identical grants of licensing authority. Everyone in the two defendant classes, one comprised of ASCAP and its members, the other comprised of BMI and its affiliates, was tied to the challenged conduct by identical grants of licensing authority, rather than being linked by common industry practices as is alleged in this action.