**ANGEL MUSIC, INC. on behalf of itself and all other publishers, persons or entities which own copyrighted music and which are represented by the Harry Fox Agency, Plaintiffs,**

**v.**

**ABC SPORTS, INC. on behalf of itself and all other producers, syndicators and distributors of television programs utilizing copyrighted music and the Harry Fox Agency, Defendants.**

**No. 84 Civ. 7900 (RWS).**

United States District Court,
S.D. New York.

March 27, 1986.

Thomas A. Dickerson, New York City, for plaintiffs.

Hawkins, Delafield & Wood, New York City, for defendants; Philip R. Forlenza, Thomas W. Pippert, Terence J. Hines, of counsel.

## OPINION

SWEET, District Judge.

Plaintiff Angel Music, Inc. ("Angel Music") brought this copyright infringement action against defendant ABC Sports, Inc. ("ABC") alleging that ABC failed to obtain a "synchronization" license to record copyrighted songs owned by Angel Music. ABC now moves pursuant to Rule 56 Fed. R.Civ.P. for summary judgment dismissing the complaint on the grounds that the copyrighted music in question was duly licensed by ABC. Angel Music has cross-moved for an order dismissing the second affirmative defense contained in ABC's answer to the complaint because it is void as a matter of federal law. For the reasons set forth below, both summary judgment motions are denied.

**Prior Proceedings**

Angel Music filed this action on November 1, 1984 purporting to represent a plaintiff class of music publishers represented by the Harry Fox Agency, Inc. ("Harry Fox"), naming as defendants Harry Fox for alleged breach of fiduciary duty and a class of producers of television programs. On December 13, 1984, Angel Music moved for certification of its plaintiff and defendant classes, and on January 7, 1985 Harry Fox moved to dismiss the complaint for

lack of federal jurisdiction, which motion was granted by order of May 22, 1985.

ABC served its answer on January 15, 1985 asserting numerous affirmative defenses to this action, and moved for summary judgment on August 19, 1985. Angel Music then filed its cross-motion for summary judgment dismissing ABC's second affirmative defense on October 15, 1985. The parties agreed to hold the class certification motion in abeyance, pending the outcome of the summary judgment motions. The motions were finally heard and submitted on December 20, 1985.

### Factual Background

Angel Music seeks to require the purported class of television producers to obtain "synchronization" licenses from music copyright owners prior to using copyrighted music compositions as background music on soundtracks of a film or videotape in synchronization with visual images. The specific claims in this suit arise out of the airing of a three-minute documentary created by ABC entitled *"Ski Jump—Evolution of Style,"* shown in connection with ABC's coverage of the 1984 Winter Olympics in Sarajevo, Yugoslavia (the "Documentary"). To depict the evolution in ski-jumping style from 1920 to the present, ABC assembled clips from each decade and filmed or videotaped selected portions of each. ABC then recorded music from the relevant time periods onto the soundtrack of the film or videotape in synchronization with the visual images of the ski-jumping. The film clip representing the ski-jumping styles of the 1950's was accompanied by nineteen seconds of a musical composition entitled "Walkin' With Mr. Lee," (the "composition"), a copyrighted song owned by Angel Music.

On February 18, 1984, during a regularly scheduled network broadcast of the Sarajevo ski-jumping, ABC broadcast the Documentary over nationwide television. Mr.

Murray Sporn ("Sporn"), president of Angel Music, saw this documentary on Mexican cable television while in Mexico in February, 1984, and initiated a series of letters to ABC complaining that ABC had failed to acquire a synchronization license for its use of "Walkin' With Mr. Lee." Mr. Albert Berman ("Berman"), then president of Harry Fox, sent similar letters to ABC requesting that it obtain a synchronization license for the composition. Mr. Charles Stanford ("Stanford"), ABC's vice president for legal and business affairs, responded in a letter of May 23, 1984 that in ABC's judgment "this incidental background use of the composition on a single occasion within our on-going coverage of the 1984 Winter Olympics was fully covered by ABC's 'blanket' performing rights licenses, and in this situation, a synchronization license was not necessary."

### Discussion

The two contracts at issue in this action concern licensing agreements for copyrighted works owned by Angel Music. The first contract authorizes Broadcast Music Inc. ("BMI") to grant to others "performance rights" in Angel Music's copyrighted compositions, permitting the holders of such licenses to perform such music live, on film, on record or on tape (the "Angel Music-BMI" agreement). BMI thus acts as a "clearinghouse" for the licensing of these performance rights, and collects fees from licensees out of which BMI compensates its affiliates for the use of their compositions. Such performance rights have been granted to Angel Music by section 106(4) of the Copyright Act, 17 U.S.C. § 106(4).[1] The portions of the Angel Music-BMI agreement relevant to this controversy are as follows:

THIRD: Publisher hereby sells, assigns and transfers to BMI, its successors or assigns, for the term of this agreement:

A. All the rights which Publisher owns or acquires publicly to perform,

---

1. Section 106(4) provides:
   Subject to sections 107 through 118, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:

(4) in the case of literary, musical, dramatic and choreographic work, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;

and to license others to perform, for profit or otherwise, anywhere in the world, any part or all of the works, such rights being granted exclusively to BMI except to the extent specifically set forth on schedule A or on a clearance sheet or cue sheet submitted pursuant to subparagraph A of paragraph Tenth.

B. The non-exclusive right to record, and to license others to record, any part or all of any of the works on electrical transcriptions, wire, tape, film or otherwise, but only for the purpose of performing such work publicly by means of radio and television or for archive or audition purposes and not for sale to the public or for synchronization with motion pictures intended primarily for theatrical exhibition or with programs distributed by means of syndication to broadcast stations.

(Exhibit C—Angel Music-BMI agreement, p. 1).

The second contract at issue concerns BMI's grant of a performance rights license to ABC (the "BMI–ABC agreement"). On January 1, 1982, BMI and ABC entered into an agreement granting ABC performance and related rights in Angel Music's (and other music publishers) copyrighted works. Paragraph II(a), granting ABC performance rights, provides:

BMI hereby grants to ABC for the term hereof, a non-exclusive license to perform, or cause to be performed, in the United States, by television broadcasting over Network and over regional and other portions thereof, now or hereafter regularly constituted, on Network's network programs over or through networks affiliated stations, all musical works to which, during the term hereof, BMI has the right to grant performing rights licenses.

Paragraph II(b) of the BMI license grants ABC an incidental right to record for the purpose of using the performance rights issued in part II(a):

(b) The license incorporates, as an incident to the performing right, the following rights of Network with respect to the musical works licenses:

(i) the right exerciseable before, during or after a broadcast transmission, to record such musical works by means of tape, wire, film, disc or any other similar or dissimilar method of recording television programs whether now known or hereafter developed, and

.     .     .     .     .

(iii) the right to use such recordings as follows:

(A) for the making of regularly scheduled Network broadcasts.

(B) for the making of delayed and supplemental broadcasts, as those terms are commonly used in the broadcasting industry, for file, reference, audition and sales purposes.

(Exhibit D—The BMI–ABC Agreement)

Angel Music contends that ABC's use of its composition "Walkin' With Mr. Lee" as background music juxtaposed with images of ski-jumping was a use commonly regarded in the music industry as a "synchronization" and was not authorized by the express terms or the intent of the parties to the BMI–ABC performing rights license set forth above. According to Angel Music, synchronization rights, a subset of the broader category of "reproduction rights" granted by section 106(1) of the Copyright Act, 17 U.S.C. § 106(1),[2] are required when copyrighted music is synchronized with visual images to create a new use, such as the Documentary aired by ABC. ABC contends that the Angel Music-BMI agreement and the BMI–ABC agreement authorized ABC to record the composition for its regu-

---

**2.** Section 106(1) provides:
Subject to sections 107 through 118, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:

(1) to reproduce the copyrighted work in copies or phonorecords;

larly scheduled network broadcast of the ski-jump documentary, as an incident to the performance right granted under the BMI performance rights license.

### ABC's Summary Judgment Motion

ABC claims that it is entitled to summary judgment because it was "duly licensed" to use the composition "Walkin' With Mr. Lee" by what it terms the plain and unambiguous language of the BMI–ABC agreement. However, ABC faces a heavy burden in order to succeed in its motion, as a motion for summary judgment may not be granted "unless the entire record shows a right to judgment with such clarity as to leave no room for controversy, and establishes affirmatively that the adverse party cannot prevail under any circumstances." *Heyman v. Commerce and Industry Ins. Co.*, 524 F.2d 1317, 1319–20 (2d Cir.1975). The Second Circuit strictly construes these rules, *Rodrigues v. Village of Larchmont, N.Y.*, 608 F.Supp. 467, 471 (S.D.N.Y.1985) reserving summary judgment for cases which present no genuine issue of material fact. This strict standard is applied in recognition of the fact that summary judgment deprives the non-moving party of the opportunity to develop a full factual record at trial, *see Jaroslawicz v. Seedman*, 528 F.2d 727, 731 (2d Cir.1975), and the severity of its consequences requires the district courts to resolve all reasonable inferences in favor of the party opposing the motion. *United States v. Diebold*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam); *United States v. One Tintoretto Painting Entitled "The Holy Family with Saint Catherine and Honored Donor"*, 691 F.2d 603, 606 (2d Cir.1982).

Certain facts of the case are undisputed. Both parties agree that the Angel Music-BMI agreement is binding and in effect, and that it permits BMI to license others to perform any part or all of "Walkin' With Mr. Lee." Similarly, the parties agree that the BMI–ABC agreement gave ABC the right to perform the composition and, as incident to the performing right, to record that composition for the making of regularly scheduled network broadcasts. At issue, however, is the meaning of these rights conveyed and the scope of this "incidental" right to record.

Under the terms of the Angel Music/BMI agreement, Angel Music conveyed to BMI "[a]ll the rights which [Angel Music] owns or acquires publicly to perform, and to license others to perform, ... any part or all of the works," and the "non-exclusive right to record, and to license others to record, any part or all or any of the works on electrical transcriptions, wire, tape, film or otherwise, but only for the purpose of performing such work publicly by means of radio and television or for archive or audition purposes." The BMI–ABC agreement conveying performance rights incorporated "as an incident to the performing right, ... the right exerciseable before, during or after a broadcast transmission, to record such musical works ... for the making of regularly scheduled network broadcasts." ABC takes the position that whether or not the use in question is considered a subsection of a synchronization right, this "incidental right to record" covered the Documentary in question, as it was not explicitly excluded by the Angel Music—BMI agreement[3] and falls within ABC's definition of an "incidental right to record" contained in the BMI–ABC agreement.

ABC contends that its interpretation of the scope of its performance rights license was previously endorsed by the Eastern District of Michigan in *Jackson v. Stone and Simon Advertising, Inc.*, 188 U.S.P.Q.

---

**3.** The Angel Music-BMI agreement by its express terms permits BMI "to license others to record, any part or all of any of the works ... but only for the purpose of performing such work publicly by means of radio and television ... and not for sale to the public or for synchronization with motion pictures intended primarily for theatrical exhibition or with programs distributed by means of syndication to broadcasting stations." As the distribution of network programming by ABC to its affiliated stations is not a "syndication," ABC claims that its use of "Walkin' With Mr. Lee" falls outside any synchronization limits contained in the Angel Music-BMI agreement.

564 (E.D.Mich.1974) and a subsequent slip opinion. *Jackson v. Stone and Simon Advertising, Inc.*, slip op. (E.D.Mich. Aug. 29, 1979). In *Jackson*, plaintiff's musical composition was used as background for a ten-second advertising commercial. The commercial was recorded on videotape for rebroadcast by several television stations. Jackson had granted BMI the right to license others to perform and record Jackson's composition and BMI in turn granted a performance license to each of the television stations. While the *Jackson* Court held that the defendant television stations had not infringed Jackson's copyright because the stations were licensed by BMI, it did not do so in a manner which would preclude this court from determining the scope of the performing rights license before it.

The *Jackson* Court made no reference to the concept of synchronization rights which underlies Angel Music's infringement claim. There the Court engaged in a brief discussion of "broadcast rights" and held that the BMI license to broadcast included the right to make tapes for delayed broadcast, a conclusion which did not address the "new use" issues of Angel Music's claims. A prior district court decision interpreting an entirely distinct set of agreements without consideration of Angel Music's alleged "synchronization rights" does not preclude Angel Music from asserting this alleged copyright violation.

Angel Music has produced evidence to cast doubt on ABC's assertion that the language of the two agreements is unambiguous and that it authorizes the instant use of "Walkin' With Mr. Lee." According to Angel Music, ABC's use of the composition in the Documentary was a "synchronization" of music and visual images, a use which falls into the category of recording rights granted to Angel Music by the Copyright Act and which requires ABC to obtain a "synchronization license" before using "Walkin' With Mr. Lee" in this manner. It is urged that ABC's construction of the Angel Music and BMI agreements is contrary to the intent of the parties and to the widely accepted industry separation of "performance rights" licenses from "recording rights" licenses.[4]

To support this alternative interpretation of the scope of the ABC license agreement, Angel Music has demonstrated that BMI is recognized in the music industry and holds itself out to music publishers as a "performance rights" agency which does not license any synchronization rights. This evidence includes BMI's own descriptions of its services to music publishers, BMI's *"Handbook for BMI Writers and Publishers"* ["Does BMI license any other rights besides performing rights? No. BMI only licenses performing rights and only non-dramatic performing rights at that"] and a stipulation in a prior state court action by ABC's attorney Terrence Hines that BMI and the American Society of Composers, Authors and Publishers ("ASCAP"), do not license synchronization rights. Synchronization licenses are customarily obtained from the Harry Fox Agency which specializes in the licensing of such rights. *See* 2 M. Nimmer, Nimmer on Copyright § 819, Performing Rights Societies, p. 8–239–8–240.1. For a discussion of these distinct licensing roles, *see Buffalo Broadcasting Company, Inc. v. ASCAP, supra,* 744 F.2d 917 (2d Cir.1984); *Broadcast Music, Inc. v. Fox Amusement Co., Inc.,* 551 F.Supp. 104 (N.D.Ill.1982). Thus Angel Music claims that it never intended to convey a synchronization right to ABC or BMI. The incidental recording right highlighted by ABC gave ABC a strictly limited recording right, designed to facilitate the performance use of the composition not to create a "new use" or new video product with the composition. According to Angel Music, such a

---

4. "Synchronization rights," or the use of music in synchronization with visual images on a soundtrack of a film or videotape, are a subset of the larger category of reproduction rights granted to music publishers under the Copyright Act, 17 U.S.C. § 106(1), and are a category of rights qualitatively distinct from the performance rights in 17 U.S.C. § 106(4). These distinct twigs in the bundle of music publishing rights have been well recognized by the courts of this Circuit. *Buffalo Broadcasting v. A.S.C.A.P.,* 744 F.2d 917, 920 (2d Cir.1984).

new use places it squarely in the category of synchronization and requires ABC to obtain a synchronization license from Harry Fox.

In short, although the meaning of the language at issue at first appears well defined to the uninitiated, this record demonstrates a factual dispute as to the scope and the meaning of the category of rights granted by the BMI–ABC agreement. The resolution of this labeling dispute—whether ABC's use of "Walkin' With Mr. Lee" was an example of a recording incidental to a performance right or an unlicensed synchronization—in this hightly sophisticated and intricate industry is a question of fact properly reserved for a trial on the merits. These divergent notions of the meaning of the contract, set against the "special commercial and trade area" of the music industry, demonstrate that this action presents disputed issues of contractual interpretation which go to the core of the infringement allegations presented. *See e.g., Mellon Bank, N.A. v. Aetna Business Credit, Inc.*, 619 F.2d 1001, 1013 (3d Cir.1980) (parties will be held to definitions given to words in specialized commercial areas in which they deal); *Frigaliment Importing Co. v. B.N.S. International Sales Corp.*, 190 F.Supp. 116 (S.D.N.Y.1960).

For example, the Angel Music-BMI license clearly excludes a category of reproduction rights from the rights granted to BMI ("... not for sale to the public or for synchronization with motion pictures intended primarily for theatrical exhibition or with programs distributed by means of syndication to broadcast stations.") Yet it is unclear whether Angel Music intended to include the "new use" at issue, a one-time network broadcast of a synchronization of visual images and recorded music, in the category of rights which it reserved for recording rights licenses. In addition to extrinsic evidence of the intent of the parties, evidence obtained from music industry experts will chart the parameters of these reserved recording rights.

Similarly, both parties agree that the BMI–ABC agreement conveyed a limited right to record as incidental to the performance rights granted in the agreement. Although Angel Music has established that the scope of this incidental recording right is ambiguous, further factual development is required to determine precisely what that language grants to ABC, if "the right to use such recordings ... for the making of regularly scheduled network broadcasts" does not include the one-time use of "Walkin' With Mr. Lee" in the manner at issue.

The elaborate scheme of distinct rights established under the Copyright Act appears to sustain the divergent meanings which the parties attribute to the contract language. Under these circumstances, summary judgment is inappropriate. *Schering Corp. v. Home Insurance Co.*, 712 F.2d 4, 9 (2d Cir.1983) (where the contract language is susceptible of two fairly reasonable meanings, the parties have the right to present extrinsic evidence of their intent at the time of contracting, and summary judgment is improper); *Heyman v. Commerce and Industry Co., supra*, 524 F.2d at 1320; *Home Insurance Co. v. Aetna Casualty & Surety Co.*, 528 F.2d 1388, 1390 (2d Cir.1976).

**Angel Music's Summary Judgment Motion**

Angel Music has cross-moved for summary dismissal of ABC's second affirmative defense, which provides:

> Pursuant to valid and binding agreements, as heretofore modified, extended, and construed by the parties thereto, ABC Sports is and was duly licensed to record the copyrighted music referred to in the complaint, including "Walkin' with Mr. Lee."

According to Angel Music, a common-law contract interpretation that ABC was duly licensed to use the composition in the manner it did for the Documentary is null and void as a matter of federal law, because it violates the purpose and intent of the Copyright Act of 1976. Angel Music contends that a grant of a "performance right" under 17 U.S.C. § 106(4) cannot convey a "synchronization right" under 17 U.S.C.

§ 106(1), and that a synchronization right cannot be implied from a performance right license such as the one which BMI granted to ABC.

Angel Music relies on the case of *Bishop v. Stevens*, slip op., No. T–7060–82 (Fed.Ct. Canada, April 15, 1985) to support its argument that a contract interpretation granting these separately enforceable synchronization rights from the "incidental right to record" would be preempted by the federal Copyright Act. The *Bishop* case, concerning the closely analogous Canadian Copyright Act, involved the plaintiff's claim that a television station had synchronized music and visual images without obtaining a "synchronization license." Among other defenses, the station claimed that the language of a "performance rights" license also conveyed a "synchronization right." Rejecting this claim, the Court held that the Canadian Copyright Act distinguished a "performance right" from a "synchronization right" as a matter of law, and refused to imply that the former included the latter:

> ... there is clearly an additional or distinct purpose in recording which distinguishes it from mere performing. I therefore do not accept that the statutory licensing scheme of sections 48 to 50 of the Act, limited as it is to "performing rights," was intended to embrace recording rights.

> . . . . .

> But in my view the Act distinguishes between mere performing rights and recording rights and it is not open to the Court to say that the former includes the latter, but only in certain cases ...

(*Id.* at pp. 22–24).

According to Angel Music and its interpretation of the *Bishop* case, contractual language in the performance rights license is preempted if it is construed to convey a synchronization right. However, the *Bishop* case simply stands for the proposition that the Canadian Court would not *imply* a recording right from the defendant's performing rights license, whereas ABC relies on an *express* grant of a recording right

incidental to its performance right to support its claims. While a statutory separation of copyright licenses into separately enforceable categories of rights may prevent a court from implying that one category grants rights which fall within another, rights from two categories conceivably could be granted expressly by the same licensing instrument.

To demonstrate that ABC's interpretation of the licensing agreement is preempted by the Copyright Act, Angel Music would have to show that this interpretation of incidental recording rights would "invade the scope of copyright law or violate its policies." *Fantastic Fakes v. Pickwick International, Inc.*, 661 F.2d 479, 483 (5th Cir.1981). While the cases cited by Angel Music stand for the well-established proposition that federal Copyright Law preempts conflicting state common law, *see* 17 U.S.C. § 301(a), none of these cases suggest that a copyright license cannot, if so interpreted, convey distinct categories of rights in the same license. Angel Music's cross-motion for dismissal of the second affirmative defense must therefore be denied and resort must be had to a factual record as to the use and effect of the rights at issue.

For the aforementioned reasons, the cross-motions for summary judgment are denied.

**IT IS SO ORDERED.**